IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MONDREA R. SCOTT                                                                          PETITIONER
ADC #705480

V.                                              NO. 5:06cv00212 JWC

LARRY NORRIS, Director,                                                                  RESPONDENT
Arkansas Department of Correction

MEMORANDUM OPINION AND ORDER

Mondrea R. Scott, an Arkansas Department of Correction (ADC) inmate, brings this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2).  She does not attack her underlying criminal conviction or sentence;[1] instead, she challenges a prison disciplinary decision.  Respondent has filed a motion to dismiss and supporting brief (docket entries #5, #6), to which Petitioner responded (docket entry #14).  For the reasons that follow, the petition must be **dismissed**.[2]

I.

On May 28, 2006, Correctional Officer Randy Pilcher wrote a major disciplinary against Petitioner, charging her with violations of Rule 6-1 (demanding/receiving money or favors or anything of value in return for protection against others, to avoid bodily harm or being informed upon), Rule 12-1 (failure to obey verbal and/or written orders of staff) and Rule 11-1 (insolence to a staff member).  According to the charge, Pilcher was working in

---

[1] According to Respondent, Petitioner is serving a thirty-year prison sentence in the ADC for aggravated robbery.  This is not disputed.

[2] The parties have consented to the jurisdiction of the Magistrate Judge (docket entry #12).

the kitchen when Petitioner and another inmate (Laquanda Jacobs) began screaming and yelling at him, saying that, if he wrote them up, they would "make sure [he] got in trouble too." Pilcher said Petitioner told him they knew inmates and officers that would say anything they (Petitioner and Jacobs) wanted them to say about him. Pilcher said he told them he would not discuss disciplinary reports and told them to stop yelling. When they continued yelling and said they did not work for him, he told them to return to their barracks several times, which they finally did. At a disciplinary hearing on June 2, 2006, Petitioner said she was returning a Bible to the kitchen and never yelled at an officer. The hearing officer found Petitioner not-guilty on the first charge, but guilty on the second and third. This was based on the officer's report and, apparently, on a videotape from a kitchen camera which "shows [Petitioner] was not obeying orders and was insolent." As punishment, Petitioner was sentenced to fifteen days in punitive segregation and her classification level was reduced from Class I-C to Class IV. She appealed to the warden, then to the disciplinary hearing administrator, then to the ADC director, with the disciplinary decision being affirmed at all levels. (Resp't Ex. A.)[3]

In this federal habeas action, Petitioner alleges that prison officials failed to abide by ADC policy in disciplining her, which violated her right to a fair and unbiased hearing. Specifically, she says ADC policy was violated because: (1) all copies of the disciplinary report were not verified; (2) the disciplinary hearing officer did not weigh all of the evidence in reaching his decision; (3) for her infractions, the maximum reduction in class from I-C should have been to Class III and not Class IV; (4) the disciplinary form does not contain

---

[3]This exhibit, attached to docket entry #6, contains copies of the disciplinary forms and appeals.

the signature of the charging officer or an affirmation regarding the accuracy of the charges; (5) the disciplinary hearing officer did not state why he discounted the witness statement or camera evidence, and he did not mention that all documents were not verified; (6) policy cannot be ignored simply because one feels the prisoner is guilty of the charges; (7) the charging officer failed to counsel with her; and (8) she is innocent of the disciplinary charges and the officer wrote them "out of spite."  As relief, she asks for restoration to Class I-C status, readmission to the P.A.L. (Principal Applications of Life) program and college courses, restoration of her "job status," and removal of the disciplinary from her institutional jacket.

Respondent argues that, because Petitioner did not lose any good-time credits as a result of the challenged disciplinary decision, the decision had no effect on the fact or duration of her ADC confinement and her current claims thus are simply challenges to the conditions of that confinement, cognizable only in a 42 U.S.C. § 1983 civil rights action. Petitioner admits that she is not attacking the length of her sentence and did not lose any good-time credits due to the disciplinary decision. She says that, due to the nature of her sentence, she is not eligible for good time. She continues to argue that the ADC officials involved in her disciplinary proceedings failed to follow ADC policy.

II.

"Federal law opens two main avenues to relief on complaints related to imprisonment:" a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a civil rights complaint pursuant to 42 U.S.C. § 1983.  *Muhammad v. Close*, 540 U.S. 749, 750 (2004).  The essence of habeas corpus "is an attack by a person in custody upon the

legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas is thus the exclusive remedy when an attack "goes directly to the constitutionality of [a prisoner's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489.  Where the length of an inmate's confinement is affected by the loss of good-time credits as a result of an adverse prison disciplinary decision, federal habeas is the exclusive federal forum for claims challenging those disciplinary decisions.  *Portley-el v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002).

A civil rights complaint under § 1983, on the other hand, "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser*, 411 U.S. at 499.  Where no good-time credits were eliminated by a prison disciplinary determination, a prisoner challenging that determination "raise[s] no claim on which habeas relief could have been granted on any recognized theory." *Muhammad*, 540 U.S. at 754-55.  The Supreme Court has never held that a prisoner may bring a habeas claim based on special disciplinary confinement imposed for infractions of prison rules, where that confinement had no effect on the incarceration ordered by the prisoner's original criminal judgment of conviction.  *Id.* at 751 n.1.

If a habeas petitioner is not challenging the validity of his conviction or sentence or the length of his state custody, a habeas court lacks the power or subject matter jurisdiction to grant relief.  *Khaimov v. Crist*, 297 F.3d 783, 785-86 (8th Cir. 2002) (finding that habeas petitioner's claims regarding prison mail and segregation were improperly brought under § 2254 because they were not alleged to have illegally extended his period of

confinement); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (dismissing habeas petition for lack of subject matter jurisdiction where prisoner did not "make any colorable allegation that his underlying conviction is invalid or that he is otherwise being denied his freedom from incarceration").

Nothing in the Court's record suggests that Petitioner's disciplinary claims, even if successful, would result in any direct or indirect change in the duration of her term of confinement in the ADC.  This Court thus lacks subject matter jurisdiction to consider the merits of her claims in a federal habeas action.

Additionally, a careful reading of Petitioner's pleadings shows that – except for one passing reference to the ADC policy's stated intent of protecting inmates' "due process" rights – she alleges only violations of ADC policy regarding the disciplinary process, rather than a violation of any provision of the United States Constitution.  (*See* docket entry #14, p.2 & attached ADC Inmate Discipline Manual.)  A federal court may issue a writ of habeas corpus only for a violation of the Constitution, laws or treaties of the United States.  28 U.S.C. §§ 2241(c), 2254(a).  There is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations.  *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).  Therefore, regardless of whether any state laws or ADC rules or regulations have been violated, this Court is limited to determining whether a federal violation has occurred.

The Fourteenth Amendment to the United States Constitution provides in part that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  Protected liberty interests may arise from the Due Process

Clause itself or from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 125 S. Ct. 2384, 2393 (2005).

The Due Process Clause does not protect prisoners from every adverse change in their confinement and does not, itself, create a protected liberty interest in remaining in the general prison population, *Sandin v. Conner*, 515 U.S. 472, 478, 480 (1995); or in any particular prisoner classification or eligibility for rehabilitative programs, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); or in any particular job assignment, *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002).

Liberty interests arising from state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin*, 515 U.S. at 484, 487. It is undisputed that neither of the disciplinary sanctions imposed upon Petitioner – punitive segregation and class reduction, with no accompanying loss of good time – had any effect on the duration of her term of confinement, as contemplated by *Sandin*. Moreover, *Sandin* expressly recognized that disciplinary action by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485.

Adjustments in classification as a means of punishment, and the resulting consequences of a lower classification level, are certainly an expected component of prison life and do not "present a dramatic departure from the basic conditions of [an inmate's] sentence." *Id.* Under the applicable Arkansas statutes, the Board of Corrections is granted broad discretion in classifying ADC inmates according to "good behavior, good discipline, medical condition, job responsibilities, and involvement in rehabilitative

activities." Ark. Code Ann. § 12-29-202(a)(3) (2003 & 2005 Supp.). Inmates may be reclassified "as often as the [classification] committee deems necessary ... to maintain good discipline, order, and efficiency at the units, facilities, or centers." *Id.* § 12-29-202(c). ADC officials are also granted broad discretion in determining an inmate's eligibility to participate in vocational, educational and rehabilitative activities within the prison system. *Id.* § 12-29-101(d)(2). A prison disciplinary hearing officer has discretion in determining the appropriate punishment for a prisoner from a range of allowable sanctions, including class reduction. *See* ADC Adm. Reg. 831(V), (VI)(F)(1) & (G)(1)(a-h) (attached to docket entry #14); Ark. Code Ann. § 12-29-103(a) (authorizing the ADC to prescribe "rules and regulations for the maintenance of good order and discipline, ... including proceedings for dealing with violations"). In short, nothing in the Arkansas statutes or ADC regulations provides a basis for finding a protected liberty interest in the classification level assigned to an inmate by prison officials, or in its effect on the inmate's eligibility for rehabilitative programs. *See Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); *Strickland v. Dyer*, 628 F. Supp. 180, 181 (E.D. Ark. 1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

Similarly, administrative and disciplinary segregation, particularly of brief duration as imposed here, is not the kind of "atypical and significant" deprivation that creates a liberty interest under *Sandin*. *Sandin*, 515 U.S. at 485-86 (thirty days of disciplinary segregation "did not work a major disruption in [a prisoner's] environment"); *Phillips*, 320

F.3d at 847 (thirty-seven days in punitive segregation); *Portley-El*, 288 F.3d at 1065-66; *Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2, 643 (8th Cir. 1996).  Again, segregation is within the range of sanctions allowed by the ADC regulations and is not an unexpected consequence for the violation of prison rules.

Therefore, because Petitioner did not have a protected liberty interest under either federal or state law in her classification level, in its effect on her eligibility for rehabilitative or educational programs, or in remaining free from segregation, her due process claims fail.

III.

For the reasons set forth above, Respondent's motion to dismiss (docket entry #5) is **granted** and this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2) is **dismissed** in its entirety, with prejudice.

IT IS SO ORDERED this 15th day of February, 2007.

_____
UNITED STATES MAGISTRATE JUDGE